*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN S. PARNESS,

          Plaintiff,

     v.

CHRISTOPHER J. CHRISTIE, et al.,

          Defendants.

Civil Action No. 15-3505 (JLL)

**OPINION**

**LINARES**, Chief District Judge:

Presently before the Court is the Amended Complaint (ECF No. 22) of Plaintiff, Martin S. Parness, which was initially filed in the Southern District of New York in April 2017, twenty months after this Court dismissed Plaintiff's initial complaint. (*See* ECF No. 12, 21). Because Plaintiff has been granted *in forma pauperis* status in this matter, this Court must review his Amended Complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, this Court will dismiss Plaintiff's complaint in its entirety because Plaintiff's claims are all either time barred, fail to state a claim for relief, or because the Court lacks subject matter jurisdiction over Plaintiff's claims.

## I. BACKGROUND

Because this Court provided a detailed summary of Plaintiff's claims in its opinion dismissing Plaintiff's first complaint, and because Plaintiff's amended complaint in large part

echoes the same allegations made in that initial complaint, albeit with some elaboration this Court will not repeat that summary here and will instead incorporate by reference the summary contained in the Court's prior opinion. (ECF No. 11 at 2-10). Instead, the Court will note those differences between the two complaints where relevant in its discussion of Plaintiff's claims provided below.

## II. DISCUSSION

### A. Legal Standard

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which the plaintiff is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) as Plaintiff is proceeding *in forma pauperis*.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim,[1] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff

---

[1] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

## B. Plaintiff's RICO Claims

As in his previous complaint, Plaintiff's chief claims in this matter are a series of civil claims brought pursuant to the Racketeer Influenced and Corrupt Organization ("RICO") Act.[2] As this Court previously explained,

> 18 U.S.C. § 1962(c) "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)). Section 1962(d) expands liability under the statute by making it "unlawful for any person to conspire to violate [18 U.S.C. § 1962(c)]". 18 U.S.C. § 1962(d). "The RICO statute provides for civil damages for any person injured in his business or property by reason of a violation of [§ 1962]." *Amos v. Franklin Fin. Servs. Corp.*, 509 F. App'x 165, 167 (2013) (quoting *Tabas v. Tabas*, 47 F.3d 1280, 1289 (3d Cir. 1995)).
>
> A violation of the statute
>
> requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. The plaintiff

---

[2] Of the over one hundred proposed counts of Plaintiff's complaint, some eighty of those counts are merely various alleged predicate acts forming the bases of the two major RICO conspiracies Plaintiff asserts in his complaint. Because all of these counts, grouped together, essentially form the factual bases for Plaintiff's RICO claims, this Court discusses them in the aggregate rather than individually.

3

must, of course, allege each of these elements to state a claim. Conducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, nor is the mere commission of the predicate offenses. In addition, the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation.

*Id.* The injury to business or property element requires "proof of a concrete financial loss and not mere injury to a valuable intangible property interest." *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (quoting *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)). A complaint therefore must contain allegations "of actual monetary loss, i.e., an out-of-pocket loss" to adequately plead the injury element. *Id.* Physical or emotional harm to a person is insufficient to show that a person was injured in his business or property under the act. *Magnum v. Archdiocese of Philadelphia*, 253 F. App'x 224, 227 (3d Cir. 2007). "Similarly, losses which flow from personal injuries are not [damage to] property under RICO." *Id.* (internal quotations omitted). Losses derived from a Plaintiff's false imprisonment are derivative of a personal injury, and therefore cannot constitute a RICO injury. *See Magnum v. Archdiocese of Philadelphia*, No. 06-2589, 2006 WL 3359642, at *4 (E.D. Pa. Nov. 17, 2006), *aff'd*, 236 F. App'x 224 (2007); *see also Evans v. City of Chicago*, 434 F.3d 916, 926-27 (7th Cir. 2006), *overruled in part on other grounds*, *Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013).

As to the injury suffered, a civil RICO plaintiff is also required to plead causation. "[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010). "Proximate cause for RICO purposes . . . should be evaluated in light of its common-law foundations; proximate cause thus requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). Where the link between the RICO acts and the alleged injury is too remote, purely contingent, or indirect, that link is insufficient to establish proximate cause.

A plaintiff establishes a pattern of racketeering activity "by showing

4

that the defendants engaged in at least two predicate acts within ten years of each other." *Amos*, 509 F. App'x at 168. Included among potential predicate acts are "federal mail fraud under 18 U.S.C. § 1341 or federal wire fraud under 18 U.S.C. § 1343." *Id.* "[M]ail or wire fraud consists of: '(1) a scheme to defraud; (2) use of the mails [or wires] to further that scheme; and (3) fraudulent intent.'" *Id.* (quoting *United States v. Pharis*, 298 F.3d 228, 234 (3d Cir. 2002)). Predicate acts under the statute also include "any act or threat involving . . . kidnapping, . . . bribery[ or] extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year" as well as the bribery of public officials under 18 U.S.C. § 201. *See* 18 U.S.C. § 1961(1). In order to be liable under the statute, each defendant must have participated in "two or more predicate offenses sufficient to constitute a pattern." *Amos*, 509 F. App'x at 168 (quoting *Banks v. Wolk*, 918 F.2d 418, 421 (3d Cir. 1990)).

Where the alleged predicate acts asserted include fraud claims, such as mail or wire fraud, a plaintiff must meet the heightened pleading requirements of Rule 9(b) in order to state a claim for relief. *CareOne, LLC v. Burris*, Civil Action No. 10-2309, 2011 WL 2623503, at *8 (D.N.J. June 28, 2011); *see also Waden v. Mcelland*, 288 F.3d 105, 114 (3d Cir. 2002). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In order to satisfy this pleading requirement, a plaintiff must "identify[] the purpose of the [mailing or use of wires] within the defendant's fraudulent scheme and specify[] the fraudulent statement, the time, place, and speaker and content of the alleged misrepresentation." *Burris*, 2011 WL 2623503 at *8 (quoting *Annulli v. Panikkar*, 200 F.3d 189, 200 n. 10 (3d Cir. 1999), *overruled on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000)). A plaintiff asserting a fraud claim must therefore allege the "who, what, when, and where details of the alleged fraud" in order to meet the requirements of the rule. *District 1199P Health and Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 527 (D.N.J. 2011). "'The purpose of Rule 9(b) is to provide notice of the precise misconduct with which defendants are charged' in order to give them an opportunity to respond meaningfully to the complaint, 'and to prevent false or unsubstantiated charges.'" *Id.* (quoting *Rolo v. City of Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998)). A plaintiff therefore "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the

> precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).
>
> RICO claims are subject to a four year statute of limitations. *See, e.g., Mathews v. Kidder, Peabody, & Co.*, 260 F.3d 239, 244-45 (3d Cir. 2001). A plaintiff's RICO claim "accrues when 'plaintiffs knew or should have known of their injury." *Id.* at 250 (quoting *Forbes v. Eagleson*, 228 F.3d 471, 484 (3d Cir. 2000)). The accrual inquiry "is both subjective and objective. The subjective component needs little explanation – a claim accrues no later than when the plaintiffs themselves discover their injuries." *Id.* at 250. Under the objective facet of the inquiry, accrual of the claim occurs when plaintiffs should have known of their injury and the source of the injury. *Prudential Ins. Co. of Am. V. U.S. Gypsum Co.*, 359 F.3d 226, 233 (3d Cir. 2004).

*Parness v. Christie*, No. 15-3505, 2015 WL 4997430, at *6-8 (D.N.J. August 19, 2015).

### A. Plaintiff's First Set of RICO Conspiracy Claims are Time Barred

Plaintiff attempts to plead two separate RICO conspiracies.[3] The first such conspiracy Plaintiff pleads concerns the actions of his ex-wife in enforcing and amending their judgment of divorce and alleged frauds upon the Bankruptcy Court in 1995 and the New Jersey Superior Court in 2003, resulting in the loss of Plaintiff's business interests in the 1990s and the entry of an amended divorce judgment against him in 2003. This conspiracy also allegedly includes various lawyers, entities, and the municipality of Hoboken who were allegedly involved in the "fraudulent" sale of Plaintiff's prior business holdings. In this Court's prior opinion, this Court dismissed this

---

[3] In his initial complaint, Plaintiff pled his claims as a series of three separate RICO conspiracies. In his amended complaint, Plaintiff collapses his original, second, and third RICO conspiracies into a single alleged RICO violation. (*See* ECF No. 22 at 153).

first alleged conspiracy with prejudice as time barred, finding that, based on Plaintiff's allegations, "Plaintiff certainly knew of the injury he allegedly suffered as a result of this purported conspiracy – the loss of his former building in Hoboken, as well as his ex-wife's involvement in that loss by the time he was arrested in 2009." *Parness*, 2015 WL 4997430 at *8; *see also Mathews*, 260 F.3d at 244-45, 250-51. This Court will therefore dismiss Plaintiff's first RICO claim as time barred. Because Plaintiff had not had an opportunity to address the time bar issue, however, the Court dismissed that claim without prejudice. (*See* ECF No. 12). Plaintiff, however, made no attempt to explain why he should be permitted to circumvent the time bar for nearly two years.

Even if this Court assumes, *arguendo*, that Plaintiff should be permitted to address that issue now, Plaintiff provides only one factual explanation[4] for why his claim should be considered timely – his allegation that he "could [not] have done anything about the case" until "July 11, 2011," when he apparently fired several lawyers who allegedly were conspiring against him in his state court matters. (ECF No. 22-2 at 195).

Plaintiff does not clearly explain why he could not have acted sooner, nor why he could not have filed a *pro se* action, as he has now done, even if his lawyers refused to file on his behalf. To the extent Petitioner is asserting that he could not have learned of the alleged frauds in the

---

[4] At the end of his amended complaint, Plaintiff also attempts to make a legal argument, that the special discovery rule applicable to securities cases announced by the Supreme Court in *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010), should apply to his RICO and civil rights claims. (ECF No. 22-8 at 672-73). That Third Circuit case Plaintiff cites for support of this contention, *Pension Trust Fund for Operating Engineers v. Mortgage Asset Securitization Transactions, Inc.*, 730 F.3d 263 (3d Cir. 2013), specifically rejects Plaintiff's own argument. As the Third Circuit explained, the *Merck* rule applies only in securities cases because the Securities and Exchange Acts have specific statutory language which informs and requires the *Merck* rule. *Id.* at 274. "However, the RICO statute of limitations is 'silent on the issue' of accrual, and for this reason, the general discovery rule applies to a RICO claim, whereby the 'discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.'" *Id.* (quoting *Koch v. Chrisie's Int'l PLC*, 699 F.3d 141, 149 (2d Cir. 2012)). Plaintiff's argument that *Merck* should govern his case is therefore without merit and this Court will consider Petitioner's claims under the general discovery rule applicable to RICO claims. *Id.*

Bankruptcy and state courts sooner, he, elsewhere in his Complaint, contradicts that assertion, by alleging that he sent a letter decrying the sale and distribution of one of his businesses in July 2001 (ECF No. 22-2 at 184), and in another place states that he sent a letter to two other Defendants in this matter identifying his ex-wife's embezzlement and fraud – the actions underlying his RICO conspiracy claims – in August 2010, more than four years before he filed his initial complaint in this matter. Plaintiff likewise makes no attempt to explain why he could not have learned of this alleged conspiracy sooner – especially in light of the fact that he was clearly aware of both the sale of the business and the judgment against him from the 2003 family court matter upon his arrest in 2009 as noted in this Court's prior opinion. To the extent Plaintiff's first RICO claim has any merit, it had certainly accrued by the time he sent his letter in August 2010 identifying his ex-wife's alleged frauds and embezzlement, and most likely had accrued sooner as there is nothing in Plaintiff's complaint clearly delineating why, with reasonable diligence, the alleged conspiracy could not have been learned of sooner. *See Prudential Ins. Co. of Am.*, 359 F.3d at 233. Plaintiff's first RICO claim remains time barred. *Id.*

Even if the Court were to give Plaintiff the benefit of the 2011 date he requests, his first set of RICO claims would still be time barred as this matter was not filed until April 2017, some six years later. Although Plaintiff did file his initial complaint in this matter in 2015, this Court dismissed that complaint without prejudice in summer 2015. In most cases, including this one, the statute of limitations for an action "is not tolled by the filing of a complaint [that is] subsequently dismissed without prejudice, as the original complaint is treated as if it never existed." *Brennan v. Kulick*, 407 F.3d 603, 606 (3d Cir. 2005). The exception to this general rule arises only where the initial dismissal is conditional – *i.e.* it provides leave to amend or address

the deficiencies in the original complaint within a certain time period – and the plaintiff files his amended complaint within the conditional period set by the court for an amended complaint and directly addresses the deficiencies in the original complaint. *Id.* at 606-08. Where a Plaintiff fails to meet those conditions, the general rule applies and the original complaint provides no tolling of the applicable limitations period. *Id.*

In this matter, Plaintiff's original Complaint was dismissed without prejudice in its entirety in August 2015. (ECF No. 12). The dismissal order was not conditional. Plaintiff made no attempt to file an amended complaint addressing the deficiencies noted in this Court's opinion supporting the dismissal of his Complaint. Instead, Plaintiff filed a new complaint, albeit one raising nearly identical if more fully explained claims, twenty months later in a different district. (ECF No. 22). It was only after that new complaint was also transferred to this Court that this matter was ultimately refiled as an amended complaint because this Court noted that it addressed the same series of claims previously dismissed. (*See* ECF No. 21). Because the initial dismissal of this matter was not conditional, and because Petitioner made no effort within a reasonable time to address the deficiencies noted in this Court's initial dismissal, instead waiting twenty months to file an entirely new case raising the same claims in another district, the exception noted in *Brennan* does not apply, and Petitioner's initial Complaint does not toll or otherwise affect the running of the statute of limitations for the claims asserted in Plaintiff's Amended Complaint. 407 F.3d at 606-09. Thus, even giving Plaintiff the benefit of the 2011 date he requests for the accrual of his first RICO conspiracy claim, Plaintiff's claim would have accrued, at the latest, nearly six years before he filed his operative complaint. Plaintiff's first RICO conspiracy claim is thus well and truly time barred and must be dismissed as such.

## B. Plaintiff's Remaining RICO Claims

Plaintiff's remaining RICO conspiracy allegations arise out of Plaintiff's allegations that a massive conspiracy of federal and state actors acted to secure a judgement against him in favor of his ex-wife following his arrest for contempt of court in 2009 and to keep him imprisoned thereafter based on the "improperly" obtained judgment thereafter. Putting aside various pleading issues including a failure to plead fraud with particularity in some counts and the possibility that portions of this second RICO conspiracy may be time barred as it runs from 2009 through 2015, Plaintiff's allegations as to this second alleged RICO conspiracy suffers from the same central defect which caused this Court to dismiss Plaintiff's previous attempt at raising these claims two years ago: the only injury Plaintiff pleads he has suffered as a result of these RICO conspiracies are his incarceration on a civil contempt order and a state court judgment in favor of his ex-wife for $600,000. Any other injuries Plaintiff alleges, such as the loss of his property and business in Israel, are either the result of his allegedly illegal incarceration or the enforcement of the allegedly improper judgment against him.

Because Plaintiff's second set of RICO claims directly attacks the state court judgment against him and because the relief Plaintiff essentially seeks is the undoing of the state court judgment against him and the undoing of the enforcement of that judgment, Plaintiff could only succeed in his RICO claims if this Court were to find that the state court's judgments were the product of fraud and bribery, the denial of Plaintiff's due process rights, or both. Because a judgment in this Court in favor of Plaintiff in these claims would impugn the state court's previous judgments, Plaintiff's remaining RICO claims and his related § 1983 claims are subject to dismissal under the *Rooker-Feldman* doctrine. As the Third Circuit has explained,

> Under the *Rooker-Feldman* doctrine, a district court is precluded from entertaining an action, that is, the federal court lacks subject matter jurisdiction, if the relief requested effectively would reverse a state court decision or void its ruling. *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 192 (3d Cir. 2006). The Supreme Court has emphasized that the scope of this doctrine is narrow, and that it applies only to "cases brought [1] by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 . . . (2005)).

*Purpura v. Bushkin, Gaimes, Gains, Jonas & Stream*, 317 F. App'x 263, 265 (3d Cir. 2009).

As this Court explained in dismissing Plaintiff's previous complaint two years ago,

> The *Rooker-Feldman* doctrine applies to both claims which were actually litigated in the state courts and those "inextricably intertwined with an adjudication by a state court. *Taliaferro*, 458 F.3d at 192. "[A] federal action is inextricably intertwined with a state adjudication, and thus barred in federal court under *Feldman*, [w]here federal relief can only be predicated upon a conviction that the state court was wrong." *Id.* (quoting *Parkview Assoc. P'ship v. City of Lebanon*, 225 F.3d 321, 325 (3d Cir. 2000)). Thus, where a federal court is "asked to redress injuries caused by an unfavorable state-court judgment," the doctrine prevents the district court from hearing those claims. *Id.*; *see also Exxon Mobil*, 544 U.S. at 293.

> In *Purpura*, the Third Circuit was faced with a situation analogous to that presented by Plaintiff's complaint: the *Purpura* plaintiff brought RICO claims against his former wife, her attorney, his own attorneys, and state court judicial officers claiming that the defendants "conspired to use the New York divorce action as a vehicle to fraudulently obtain and enter judgments against him." 317 F. App'x at 264. The *Purpura* plaintiff had "lost at every level of the New York state courts. . . his complaint [sought] redress solely for 'injuries' caused by those state court judgments – i.e., the payments and other property distributions that those judgments have required to make," and the state court proceedings had concluded prior to the bringing of his federal complaint. *Id.* at 266. Based on these facts and the Third Circuit's conclusion that "success on [the plaintiff's] claims would entail a ruling that the state judgments

> he challenges are invalid because they were the product of fraud, the denial of due process, or both," the Court concluded that the *Purpura* plaintiff's claims were "precisely the kind of action that the *Rooker-Feldman* doctrine is designed to preclude" and thus dismissed the plaintiff's appeal as the District Court lacked subject matter jurisdiction to hear his original case. *Id.*

*Parness*, 2015 WL 4997430 at *9-10.

As in his previous Complaint, Plaintiff in this matter seeks to use RICO as a means to undo the state court judgments against him which had been litigated extensively in the state courts prior to the filing of this matter, with the actual judgment against Petitioner having apparently been litigated through all of the state courts to completion several years ago, with only the question of whether Plaintiff should remain incarcerated for failure to pay the judgment remaining alive as of the time the Amended Complaint was filed in spring 2017. Throughout his lengthy Complaint, Plaintiff decries the judgments against him as a denial of due process and seeks to have those judgments declared void as a result. Plaintiff likewise pleads that his RICO injuries are the allegedly fraudulent judgment against him and the enforcement of that judgment in the form of liens against his property elsewhere.[5] Plaintiff's remaining RICO claims therefore ask this Court to redress injuries caused by the state court's judgments, and these claims are therefore inextricably intertwined with the state court's underlying orders and judgments, and are in turn subject to dismissal under the *Rooker-Feldman* doctrine. As in *Purpura*, Plaintiff asks this Court to award him damages based on a finding that the state court's judgments were the result of fraud, a denial

---

[5] To the extent that Plaintiff's damages arise directly or indirectly out of his incarceration on civil contempt charges, those damages are the result of personal injury to plaintiff rather than injury to his business or property and would not be not actionable under RICO in any event. *See Magnum*, 253 F. App'x at 227; *Evans*, 434 F.3d at 926-27; *see also Hemi Group, LLC*, 559 U.S. at 9. Thus, the only real injury Plaintiff has pled for his remaining RICO claims would be the state court's judgment against him and the enforcement of that judgment.

of his due process rights, or both; and, as a result, his non-time barred RICO claims are barred by the *Rooker-Feldman* doctrine and this Court lacks subject matter jurisdiction to hear them. 317 F. App'x at 263-64. Plaintiff's remaining RICO claims must therefore be dismissed without prejudice for lack of jurisdiction once again.

## C. Plaintiff's 42 U.S.C. § 1983 Claims[6]

In addition to his RICO claims, Plaintiff's amended complaint also asserts several claims alleging that his constitutional rights were violated by the conspirators and/or the state courts, and that he is therefore entitled to relief pursuant to 42 U.S.C. § 1983. Section 1983 provides "private citizens with a means to redress violations of federal law committed by state individuals." *Woodyard v. Cnty. Of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013). To assert a claim under the statute, a plaintiff must show that he was a deprived of a federal constitutional or statutory right by a state actor. *Id.* When evaluating the merits of a § 1983 claim, the Court must identify the contours of the underlying right Plaintiff claims was violated and determine whether Plaintiff has successfully alleged a violation of that right. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000).

In his Amended Complaint, Plaintiff raises numerous claims pursuant to § 1983 including false arrest and false imprisonment, malicious prosecution, selective prosecution, abuse of process, wrongful institution of proceedings, denial of right to a fair trial through the fabrication of evidence

---

[6] Plaintiff also attempts to raise claims pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 397 (1971). A *Bivens* claim is the federal analogue to an action under § 1983 and thus applies to those defendants Plaintiff alleges acted under color of federal law, rather than state, law. *See Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cr. 2001) ("A *Bivens* action . . . is the federal equivalent of the § 1983 cause of action against state actors, [it] will lie where the defendant has violated the plaintiff's rights under color of federal law"). As the confines of a *Bivens* claim and a similar claim brought pursuant to § 1983 are usually coterminous, the same legal principles apply to both claims and the legal analysis is virtually identical. *Id.* This Court therefore refers to all of Plaintiff's civil rights claims as § 1983 claims, although *Bivens* technically applies to the federal Defendants.

and inducement of false testimony/perjury, stigma plus defamation, and denial of access to the courts. The inherent problem with Plaintiff's claims, however, is that most, if not all of them, concern events that he was aware of more than two years before he filed his current complaint. Claims brought pursuant to 42 U.S.C. § 1983 in New Jersey are subject to New Jersey's two year personal injury statute of limitations. *See Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013). "Under federal law, a cause of action accrues, and the statute of limitations begins to run when the plaintiff knew or should have known of the injury upon which its action is based. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). "As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.* Claims for false arrest and false imprisonment, however, are subject to special accrual rules: false arrest claims accrue at the time of the arrest, *see Brown v. Schreck*, 2015 WL 4318724, at *3 (D.N.J. July 14, 2015), while false imprisonment claims accrue at the point where an individual becomes held pursuant to legal process including the point where he is bound over for trial or arraigned. *See Wallace v. Kato*, 549 U.S. 384, 389-90 (2007).

Plaintiff filed his operative Complaint in this matter on or after April 20, 2017. (Document 8 attached to ECF No. 22 at ECF PageID 1371-74). As such, absent tolling, any claim Plaintiff may have that accrued prior to April 20, 2015, would be time barred and would need to be dismissed as such. As this Court noted in its prior opinion, and as is clear from Plaintiff's Amended Complaint, Plaintiff's arrest for civil contempt occurred in 2009, and he was brought before a state court judge shortly thereafter. His claims for false arrest and false imprisonment thus accrued in 2009, and are well and truly time barred.

As to Plaintiff's other § 1983 claims, a close inspection of Plaintiff's claims reveals that he

details only a few events which occurred after April 2015 in his complaint, and the vast majority of his alleged claims accrued at the latest during the litigation following his arrest in 2011 and 2012. As to those events occurring after April 2015, Plaintiff alleges that in September 2015, he sent a letter to many of the state court judges and Governor Christie of New Jersey detailing his allegations of wrongdoing by the state courts (ECF No. 22-4 at 401), that he sent a similar letter raising his claims of wrongdoing to various Israeli governmental officials in May 2015 (ECF No. 22-5 at 405-06), and finally that Judge Casale issued a "sham opinion" in November 2015 whose nature is not clear from the Complaint, but appears to have been a decision on whether Petitioner should be released from jail as he was unable to pay the judgment against him (*See* ECF No. 22-5 at 448-49). Plaintiff does not detail how the two letters in any way resulted in a violation of his rights, and it appears that Plaintiff had previously written similar letters to the persons to whom he sent those letters. Plaintiff likewise provides no more than a conclusory allegation to suggest the November 2015 opinion was a "sham" and does not plead how that opinion denied him due process or otherwise harmed him. Thus, Plaintiff pleads either no harm or only a conclusory allegation of any harm which occurred to him after April 2015.[7]

The last actual injury Plaintiff appears to assert he suffered, other than his continued incarceration, was the allegedly improper sale of his properties in Israel for the benefit of his ex-wife, which, Plaintiff alleges, occurred "sometime in the middle of 2014." (ECF No. 22-5 at 407). However, Plaintiff alleges that he became aware of that injury at the "sham" "ability to pay

---

[7] Because Plaintiff pleads no more than a conclusory allegation as to any harm resulting from the November 2015 opinion, any § 1983 claim Plaintiff may have wished to plead regarding that "sham" opinion must be dismissed without prejudice for failure to plead a claim for which relief may be granted. *Iqbal*, 556 U.S. at 678.

hearing" held in January 2015. Thus, it is apparent that Plaintiff was aware of all of the non-conclusory injuries giving rise to his § 1983 claims by, at the latest, January 2015, and that all of the non-false arrest/imprisonment § 1983 claims Plaintiff has pled that, other than malicious prosecution or selective prosecution had, accrued by that date. *Kach*, 589 F.3d at 634. Absent some basis for tolling the statute of limitations, Plaintiff's non-malicious prosecution and selective prosecution claims must be dismissed without prejudice as time barred.

This Court perceives no basis for the tolling of the statute of limitations in this matter, especially in light of the fact that Plaintiff was aware of most, if not all, of these same allegations when he filed his original, long dismissed Complaint in 2015. In his Amended Complaint, Plaintiff presents only one argument for why his claims should not be considered time barred, which this Court addressed in relation to Plaintiff's RICO claims above – that his claims should be subject to the special accrual rule for securities actions announced in *Merck*, 559 U.S. 633. As this Court explained above, however, the *Merck* rule applies only to claims brought pursuant to the various securities statutes because they have specific language requiring such a rule. *See Pension Trust Fund*, 730 F.3d at 274. Because § 1983 contains no similar language, it, like civil RICO, is not subject to the *Merck* rule, but falls under the normal accrual rule set forth above. *Id.* Since the *Merck* rule does not apply, it provides no basis for a later running date for the statute of limitations. Plaintiff has thus provided no basis for a later run date for the statute of limitations, and all of his § 1983 claims, other than his selective prosecution and malicious prosecution claims, are time barred and will be dismissed as such.

However, because malicious prosecution and selective prosecution may accrue at a later date depending on the circumstances, the Court cannot dismiss those two claims as time barred.

16

As this Court previously explained to Plaintiff, however,

> [b]oth of these claims, however, require a plaintiff to plead that he was actually prosecuted for a criminal offense. *See, e.g., Morris v. Verniero*, 453 F. App'x 243, 246 (3d Cir. 2011) (selective prosecution requires showing that state prosecutors decided to prosecute plaintiff on a discriminatory basis); *McKenna v. City of Phila.*, 582 F.3d 447, 461 (3d Cir. 2009) (claim under § 1983 for malicious prosecution requires that defendants initiated a criminal prosecution without probable cause). [Because] Plaintiff was . . . incarcerated pursuant to a civil contempt order and has not been criminally prosecuted . . . Plaintiff has failed to plead a claim for which relief may be granted as to both of these claims.

*Parness*, 2015 WL 4997430 at *14. Plaintiff's malicious prosecution and selective prosecution claims must therefore also be dismissed without prejudice. All of Plaintiff's § 1983 claims will therefore be dismissed at this time.

**D. Plaintiff's Purported FSIA Claim**

Plaintiff also seeks to bring claims, purportedly under the Foreign Sovereign Immunities Act ("FSIA"), against several Israeli consular officials. However, the three Defendants Plaintiff names in relation to this claim, are two Israeli ambassadors and the consul general for the Israeli consulate in New York. The Foreign Sovereign Immunities Act is a statute codifying the "restrictive theory of sovereign immunity" adopted by the United States and sets forth when and under what circumstances the federal courts will have jurisdiction over foreign governments, but is not a basis for liability in and of itself. *See Samantar v. Yousuf*, 560 U.S. 305, 313 (2010). The FSIA does not govern the immunities or liabilities of foreign nationals acting in a governmental or diplomatic capacity in the United States, and was not intended to replace or supplant the individual immunities applicable to diplomatic and consular officials. *Id.* at 319 n. 12, 325-26. Although the FSIA was amended in 2008 to provide a private cause of action against foreign states


17

which are designated as sponsors of terrorism, *see, e.g., Fraenkel v. Islamic Republic of Iran*, 248 F. Supp. 3d 21, 33 (D.D.C. 2017), this Court is aware of no provision of the Act providing a Plaintiff with a private cause of action against consular officials for their failure to provide an individual with an attorney, which is the apparent basis for Plaintiff's purported claim. As this Court is aware of no authority providing for such a private cause of action under the Act, and as Plaintiff has provided no such authority, this Court will dismiss Plaintiff's purported FSIA claims without prejudice for failure to state a claim for which relief can be granted.

### E. Plaintiff's remaining state law claims

In addition to Plaintiff's federal claims, Plaintiff also attempts to raise various state law claims, including legal malpractice and other common law claims. As this Court shall dismiss all of Plaintiff's federal law claims over which this Court has original jurisdiction for the reasons expressed above, this Court need not, and will not exercise, supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000). Because the Court has dismissed all claims over which it had original jurisdiction and has declined to exercise supplemental jurisdiction over Plaintiff's state law claims, plaintiff's amended complaint will be dismissed in its entirety.

### III. CONCLUSION

For the reasons stated above, this Court will dismiss Plaintiff's amended complaint (ECF

No. 22) in its entirety.  An appropriate order follows.

/s/ Jose L. Linares
JOSE L. LINARES
Chief Judge, United States District Court